# Gillespie, Appellant, v. American Zinc and Chemical Company.

*Real property—Oil leases—Location of wells—Unreasonable location—Equity—Injunction—Refusal.*

1. The lessee under an oil lease is not at liberty to choose locations for the drilling of wells in utter disregard of the rights of the land owner.

2. The lessee under an oil lease will not be entitled to the aid of a Court of Equity in the effort to drill wells so located as to impair or destroy improvements upon the land and hinder the owner of the surface in the enjoyment thereof, where there are other locations on the land, where wells could be drilled and operated without inconvenience to the owner, and without impairing the lessee's chances of producing oil. For whatever injury the lessee may suffer by reason of his inability to drill wells at places which would destroy improvements, he should seek compensation at law.

Argued Oct. 8, 1914. Appeal, No. 120, Oct. T., 1914, by plaintiff, from decree of C. P. Washington Co., No. 2195, in equity, refusing an injunction in case of R. G. Gillespie v. American Zinc & Chemical Company, a corporation. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.   Before McIlvaine, P. J.

The opinion of the Supreme Court states the facts.

The court on final hearing refused the injunction and entered the decree set forth in the opinion of the Supreme Court.   Plaintiff appealed.

*Errors assigned,* were in dismissing exceptions to various findings of fact and conclusions of law of the trial judge, and the decree of the court.

*John C. Bane,* with him *John E. Patterson,* of *Crumrine and Patterson,* and *George J. Wolf,* for appellant, cited: Greensboro Natural Gas Co. v. Fayette County Gas Company, 200 Pa. 388; Easton, S. E. & W. E. Pass. Ry. Co. v. Easton, 133 Pa. 505, 521.

*A. Leo Weil,* of *Weil & Thorpe,* with him *Donnans, Brownson & Miller,* for appellee.—Plaintiff is not entitled to locate the wells on places occupied by defendant's improvements: Gulf Pipe Line Co. v. Pawnee Tulsa Pet. Co., 41 L. R. A. (N. S.), 1108, 127 Pac. Repr. 252; Collins v. Charters Val. Gas Co., 139 Pa. 111; Farver v. Car Co., 24 Pa. Superior Ct. 579; Pfeiffer v. Brown, 165 Pa. 267; Penna. Coal Co. v. Sanderson, 113 Pa. 126; Jones v. Wagner, 66 Pa. 429.

Opinion by Mr. Justice Potter, January 2, 1915:

In this bill in equity, filed by Robert G. Gillespie, against the American Zinc and Chemical Company, he prayed for an injunction to restrain the defendant from interfering with him and his employees in drilling oil wells on two tracts of land described in the bill.  A preliminary injunction was awarded and subsequently defendant filed an answer.  The case was put at issue and tried, the material facts being found substantially as follows: In 1901 one W. W. Vance leased from M. M. Acheson and wife the exclusive right of drilling and

operating for petroleum, oil and gas, upon a tract of 185 acres of land in Smith Township, Washington County, Pennsylvania, for a term of two years, and as much longer as oil or gas should be found there in paying quantities, with certain privileges as to the use of water, laying of pipe lines, and the erection and removal of machinery and fixtures. Shortly after its execution, this lease was acquired by Robert G. Gillespie, the plaintiff. In 1905 he also leased from J. W. Hervey, the owner of 125 acres adjoining the Acheson tract, all the oil and gas in and under the Hervey tract, for a period of ten years, and as much longer as oil or gas should be found there in paying quantities, with the usual privileges as to water, pipe laying, fixtures, etc. In April, 1913, the American Zinc and Chemical Company, the defendant, became the owner of both the Acheson and Hervey tracts, together with the underlying coal.

The plaintiff has expended about $90,000 in developing oil upon these farms, six oil wells having been drilled on the Acheson land, and eight on the Hervey land. These wells produced various amounts of oil, ranging from three barrels to twenty-five barrels per day. Thirteen wells are still in operation, which average less than one barrel per day. Up to the present time the total realized by plaintiff from the two leases, amounts to about $77,000, which is about $13,000 less than the cost of production. When defendant purchased the farms in April, 1913, and for some time before, the average production for the thirteen wells in operation, was less than one barrel per day, and no well had been operated on either of the farms for two years and a half, and defendant had reason to believe that it would not be profitable for plaintiff to drill any more wells there. It was defendant's purpose to establish on the land a large industrial plant and to obtain a supply of fuel therefor, by mining the coal under the surface, which it purchased at the same time that it purchased the farm. When defendant was engaged in constructing its contemplated

improvement, plaintiff announced his intention of drilling two additional wells, one on the Acheson farm, and the other on the Hervey farm. The former well he proposed to drill within the limits of the water reservoir, which defendant had begun to construct, and the latter he proposed to drill on the site of one of defendant's contemplated buildings, for which grading had already been done. Plaintiff hauled and deposited at the points selected for the two new wells, lumber for the purpose of construction and his rig-builders started to lay the foundation timbers. Thereupon defendant's employees, under the direction of its superintendent and against the protest of plaintiff's superintendent, removed the lumber and rig-timbers outside the limits of the reservoir and from off the building site. Plaintiff then filed the present bill. After the preliminary injunction had been granted plaintiff moved his lumber and timbers back to the reservoir site, and drilled a well through the oil sands, but at the time of the hearing it did not appear whether or not the well would be productive. Up to that time it was not. Nothing further was done towards drilling the other well. The trial court found that a shifting of the wells a distance of 150 feet away from the location first selected by plaintiff's superintendent, would have placed them where they would not in any way have interfered with defendant's improvements, and so far as human judgment could predict, would have given to plaintiff equally good chances of obtaining oil. There had been friction between the respective superintendents of the parties, and considerable ill feeling existed between them, which doubtless had much to do with their inability to reach an amicable understanding. The court below dismissed exceptions filed by plaintiff to the adjudication of the trial judge, and refused to grant a permanent injunction as prayed for in the bill, but entered the following decree:

"1st: That the plaintiff, R. G. Gillespie, has not forfeited or abandoned his vested interest in the oil and gas

under either the Acheson or the Hervey farm or his right to drill such additional wells through the surface thereof as may be reasonably necessary to obtain that oil or gas, and that his agreements of lease, under which he claims, have not been terminated and ended.

"2d: That the plaintiff, R. G. Gillespie, has the right to drill such additional wells as may be reasonably necessary in any location on said tract of land that will not unnecessarily interfere with, harass or annoy the defendant company in the occupancy of the surface for the purposes for which it now holds the same, and also has the right to maintain his necessary pipe lines and rights of way to and from his producing wells.

"3d: That it is the defendant company's duty, if in the occupancy of the surface for its purposes it interferes with any right of way of the plaintiff, to supply another right of way that will answer the plaintiff's purposes, or to pay to him the expenses which he shall reasonably incur in providing for himself such right of way.

"4th: That R. G. Gillespie, the plaintiff, and the American Zinc & Chemical Company, the defendant, each pay one-half the costs of this proceedings."

The court retained the bill for the purposes of execution, and for the prevention of any further wrongful action in the premises by either of the parties.

Plaintiff has appealed and his counsel have filed sixteen assignments of error; in fifteen of them complaint is made of the dismissal of exceptions to the adjudication, and one is to the final decree. The appellant sought to restrain defendant from interfering not only with the two wells which he located, but also with the drilling of any other wells upon the lands included in the leases. The court below could not have sustained this claim without holding that appellant had the absolute right, without regard to the rights of the lessor of the land and his successors, to locate wells at any point on the demised premises, except on the ten acres surrounding the buildings reserved in the Acheson lease,

and in the space of 300 feet about the buildings, which was excepted from the Hervey lease. The Acheson lease contains a provision that the "operations (are) to be conducted so as to interfere the least with farming privileges." No such provision appears in the Hervey lease. The court below held, and made the finding part of the decree, that appellant had not forfeited or abandoned his vested interest in the oil and gas under either of the tracts, and that he had the right to drill such additional wells as might be reasonably necessary at any location on said tracts of land, that would not unnecessarily interfere with, harass, or annoy the defendant company, in the occupancy of the surface. In reaching this conclusion we feel that the court below gave to appellant everything to which he could justly lay claim. The position of the trial judge is undoubtedly sound, and his statement of the legal relations, existing between the parties is fair and just. He says "the lessee and lessor in the case of an oil well are both in possession of the surface, and each in the exercise of its rights therein and thereon is in duty bound to have due regard for the rights of the other. That is, the plaintiff in this case in exercising his rights owed the duty to the defendant company to not unnecessarily, carelessly, or wantonly injure it in its proper use of the surface; and in choosing between two locations for drilling a well equally available to him, the plaintiff was bound to choose the one that would do the least injury to the defendant company. And the defendant company in the use of the surface for any available purposes was in duty bound to exercise reasonable care not to interfere with, injure or annoy the plaintiff in drilling and operating his oil wells. The plaintiff and the defendant company were so situated, and their respective rights were such as to make especially applicable to each of them the rule 'sic utere tuo ut alienum non laedas.' " A sound principle applicable to such a situation as this appears in 1 High on Injunctions, §9, where it is said: "Substantial and

positive injury must always be made to appear to the satisfaction of a court of equity before it will grant an injunction, and acts which, though irregular and unauthorized, can have no injurious result, constitute no ground for the relief." Under the facts, as found and stated by the trial judge, it is clear that the location of an oil well by appellant and its maintenance within the limits of the contemplated reservoir, would have been a very serious injury to defendant. The evidence amply supports this finding. On the other hand there is the testimony of a number of witnesses well qualified to express an opinion upon the subject, who said that if the location of the well was shifted for a distance of 150 to 200 feet from the point selected by appellant, and placed outside the limits of the reservoir, the chances of obtaining oil would be equally as good, if not better; and as to the well located on the Hervey tract, there was testimony that it could be moved from 50 to 150 feet, so as to take it away from the building site, and yet preserve for the well equally as good a location. We are satisfied that under this testimony, the trial judge was fully warranted in finding as he did in his thirteenth finding of fact, that by shifting the wells a distance of 150 feet from the points where they had been located, appellant would have locations with equal chances of obtaining oil, so far as human judgment could tell, with those first selected, and that the improvements of the defendant would not then be interfered with in any way. It follows from this, that the injunction for which appellant asked, could not properly have been granted. There is nothing in the testimony to indicate that such a change of location which would permit the wells to be drilled at points situated from 100 to 150 feet away from the original locations, would result in any substantial injury to appellant, while it is very evident that it would be a serious and positive injury to the defendant, to deprive it of the right to locate its reservoir and buildings where the contour of the ground required them to be

placed. Nor is there anything in the testimony, which indicates that appellant cannot be amply compensated in damages, for any injury which he may suffer. For any curtailment of his rights in this matter there would seem to be an adequate remedy at law. He has the right to search for and obtain oil upon the land owned by defendant. The latter has the right to use the land for all purposes not inconsistent with the rights vested in appellant. The lessee is not at liberty to choose locations for the drilling of wells in utter disregard of the rights of the land owner. Possession of a small area here and there upon a farm is all that is needed to drill the wells necessary to get the oil, or to demonstrate its absence. Where a change of a few feet in the location, one way or another will protect or preserve some valuable improvement, without detriment to the chances of production, it is manifestly the duty of a lessee to exercise his rights with reasonable reference to the reserved rights of the land owner. The court below has only recognized this duty. As set forth in the seventh conclusion of law, he has found that as between two proposed locations for the drilling and operation of a well, when one would injure, harass and annoy the owner of the land, without benefit or advantage to the appellant, while the other would result in no such injury, the appellant is bound in equity to choose the latter location, if in so doing he is not substantially injured, or put to disadvantage thereby.

The assignments of error are overruled, the decree of the court below is affirmed, and this appeal is dismissed at the cost of appellant.