## Equitable Gas Co. v. Rocca

*Marriner, Wiley & Marriner*, for plaintiff.

*Howard F. Carson*, for defendants.

WEINER, J., September 7, 1954. — This is a complaint in equity asking for injunctive relief against defendants above named, alleging that said defendants have given notice to plaintiff of their intention to flood a portion of the land owned by defendants in Fallowfield Township, this county, under and across which land plaintiff, as a public service corporation, maintains a 12-inch transmission gas line by virtue of a right of way obtained from defendants' predecessor in title.

The basis of the complaint is that the flooding of its right of way would be a violation of plaintiff's legal

rights with respect thereto, and an unreasonable interference therewith and would result in irreparable damage to plaintiff.

Plaintiff claims and has offered evidence in support thereof that the flooding of the surface of the said land would delay the immediate repair of any leaks or damage to said transmission line and the said flooding would result in irreparable loss of gas, time, money and possibly consumers served by plaintiff, and that the proposed flooding of said land would be in violation of its rights of ingress and egress, maintenance, use, removal and repair of said pipeline as granted in its right of way.

Defendants in their answer to the complaint and in the testimony offered by them, contend that the flooding of the portion of the land in question would not be an unreasonable interference with the rights of plaintiff, that the wording of the right of way in question gives them the legal right to do so, that they have the legal right under the laws of Pennsylvania to proceed with the project in question so long as they are willing to make provision for the draining of the water over the right of way so as to permit the necessary maintenance and repair to the said gas line of plaintiff.

The court on August 21, 1953, granted a preliminary injunction against defendants and a hearing thereon was fixed for August 24, 1953, to consider the continuance or dissolution of the said preliminary injunction.

By virtue of a stipulation agreeing thereto, an order was made on August 24, 1953, continuing the preliminary injunction until final hearing.

A hearing was held before the Hon. Carl E. Gibson, P. J., (now retired) on Monday, December 28, 1953, and considerable testimony was offered on behalf of

both plaintiff and defendants. After arguments of counsel heard by this court, and after a study of the pleadings, the record and exhibits in the case and after an examination of the laws of Pennsylvania applicable thereto, this court makes the following adjudication.

### Findings of Fact

1. William Rocca and Domenico Rocca hold record title to the real estate involved in this proceeding by virtue of a deed of record in the Recorder's Office of Washington County, recorded in Deed Book, vol. 762, page 498, and Louis Partazana admittedly holds an unrecorded interest in said property.

2. Plaintiff, The Equitable Gas Company, is the owner of and is now using a 12-inch transmission gas line which transmits gas from West Virginia and other southern states to the Pittsburgh area, supplying gas service for the Pittsburgh system of the Equitable Gas Company. A portion of said line crosses and lies on the property of said defendant.

3. Said gas pipeline was originally laid in 1898 over said property under and by virtue of a right of way, dated January 26, 1898 and recorded December 28, 1898, in said Recorder's Office in Deed Book, vol. 460, page 304. The said Equitable Gas Company by merger and as successor to the grantees named in said right of way is now the lawful owner of said right of way granted by the predecessors in title to the present owners.

4. Defendants have given notice to said plaintiff of their intention to flood the surface of the ground under which this said 12-inch line is laid, for a distance over said line in excess of 200 feet.

5. The portion of the pipeline over which the water will extend if flooded by defendants, is a 12-inch dresser coupling jointed pipeline, a portion of which has been wrapped and coated but not weighted.

6. A portion of the surface of the ground under which this said 12-inch line is laid, where defendants propose to flood the same, is now and has been for some time in a swampy condition, necessitating certain precautions to be taken by plaintiff to protect the said line from the effects thereof.

7. Defendants have built and now operate a restaurant and motel on their property referred to in the first finding of fact. The proposed reservoir would be adjacent to this restaurant and motel owned and operated by defendants and would provide water for the convenience of themselves, their guests and customers and would also provide water for fire protection for their property.

8. The flooding of the area over the pipeline with water to a proposed depth of approximately three feet above the level of the ground over the said pipeline would not of itself result in any damage to the pipeline provided waters from coal mining operations are not permitted to flow into the area in question.

9. The creation of the reservoir by defendants would not deprive plaintiff of its right of ingress and egress to repair, maintain and/or replace that portion of the pipeline but the cost and expense thereof might thereby be increased.

10. The reservoir, if constructed as proposed by defendants and equipped with flood gates as proposed by them, could be lowered within approximately three hours by the opening of the said flood gates to a level below the lowest part of the pipeline affected.

11. A break or leak in that portion of the line under the proposed reservoir should not result in a greater loss of gas prior to the repair of said break or leak than if the land remained in its present state since plaintiff can promptly shut off the gas from the portion affected by the leak or break.

12. In the event defendants flood the portion of their land in question, the rights of plaintiff could be protected by requiring defendants, their heirs, assigns or tenants in possession thereof to drain the said reservoir promptly upon the request of plaintiff whenever the same is necessary for the repair, maintenance and/or replacement of said gas line.

### Discussion

In 1898 plaintiff's predecessor in title obtained "a right of way to lay and maintain one 12-inch pipeline, and operate the same over and through" the lands now owned by defendants "with ingress and egress to and from the same  The pipeline not to interfere with the free use of the land by the (grantors) heirs and assigns, except for the necessary use and maintenance of said line."

In deciding this case, two problems are thus presented:

(1) What is the true construction of the instrument granting the easement: and (2) would the proposed flooding of defendants land result in an unreasonable and substantial interference with the rights of plaintiff such that equity should enjoin this interference?

The following rules of construction are applicable in the case of the grant of an easement:

"Where an easement is created by express grant or reservation, the extent of the right acquired depends not upon user . . . but upon the terms of the grant or reservation properly construed. In construing such instruments for the purpose of determining the extent of the right acquired, general rules of construction apply. Thus the grant or reservation must be construed with reference to . . . pertinent statutes existing at the time of its execution. The words used should receive their plain ordinary meaning in the absence of anything to show that they were used in a different

sense. If the language is unambiguous, extraneous circumstances should not be considered": 28 C. J. S. Easements §75.

"The ordinary rule undoubtedly is that when the owner of the fee in land conveys a right of way over it he retains to himself full dominion over the land, except so far as it is necessary to restrict that dominion in order to secure the enjoyment of the easement granted, and that he may make any use of the land which does not interfere with the reasonable use of the way by his grantee": Smith v. Rowland, 243 Pa. 306, affirming the findings of fact and conclusions of law of Judge Shafer of the Common Pleas Court of Allegheny County.

It appears from the reading of the right of way granted, that plaintiff, as the owner of the easement, must not interfere with the "free use" of the land, "except for the necessary use and maintenance of said line." The plain meaning of these words should be readily ascertainable, but some doubt seems to exist as to the true legal construction and interpretation of the same.

The authorities outside of Pennsylvania seem to be in conflict in regard to the interpretation to be given to instruments such as the one here presented. In Babler v. Shell Pipe Line Corp., 34 F. Supp. 10, E. D. No. 1940, the court construed quite broadly the rights reserved to the owner of the servient tenement. In that case there was an action brought to obtain judicial construction of an easement as well as to fix the limits of it. The grant provided that the easement owner could make repairs and keep up maintenance, "Together with rights of ingress and egress," and "the Grantor to have the right to fully use and enjoy the above described premises." This wording is similar to the wording in the instant case. In construing those words, that court asserted:

"No provision is made in the easement limiting the right of the property owner to the use of the surface to within any given distance of the original or subsequently constructed pipe lines. No provision is made even that the surface of the ground over the pipe lines shall be kept free of buildings or other obstructions. . . . It is apparent therefore, that the easement reserves to the grantor the right to 'fully use and enjoy' the property subject only to the grantee to place pipe lines . . .": 34 F. Supp. at 13.

The court in the Babler case has taken what appears to this court to be the modern and proper view of the rights of servient estate owners. We are of the opinion that this same modern view prompted the American Law Institute's Committee on Property to adopt the restatement of the law with respect to the privileges of the possessor of the servient tenement to use such tenement. Section 486 of the Restatement of the Law of Property dealing with servitudes, reads as follows:

"The possessor of land subject to an easement created by conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance."

We reject the theory, as advanced by plaintiff in this case, that the easement must be construed in the light of the conditions present when it was created in 1898 and that the owner of the servient estate is bound to use it only for agricultural purposes. To adopt such a view would be to stay the march of progress where such servient estates are near to or in the areas of natural development resulting from urban expansion. This apparently was also in the minds of the American Law Institute's Committee on Property for in the note under §484 of the Restatement of the Law of Property we find that in speaking of additional or different uses of dominant tenements, they suggest that the parties

to the conveyance creating an easement contemplated a normal change in the use of the dominant tenement. Eo converso, we would be warranted in assuming that the same parties to the conveyance contemplated a normal change in the use of the servient tenement.

The same thought with respect to the rights of the owner of the servient tenement to make use thereof is found in Tiffany, The Law of Real Property, Third Ed., vol. III, §811.

"The owner of the servient tenement may make any use thereof, which is consistent with or not calculated to interfere with the exercise of the easement."

This same theory has been recognized by the courts of Pennsylvania and consequently they have refused to interfere when the injury complained of is not serious or substantial and where the rights of the owner of dominant tenement can be protected. See Schmoele v. Betz, 212 Pa. 32; The Haig Corp. v. Gassner Co., Inc., 163 Pa. Superior Ct. 611; Smith v. Rowland, 243 Pa. 306.

To the same effect, see the case of Gillespie v. American Zinc & Chemical Co., 247 Pa. 222, which arose in Washington County and in which the same principle was expressed by McIlvaine, P. J., and recognized and affirmed by our Supreme Court.

Both the present and contemplated use of defendants' property, the servient tenement in this case, is lawful and logical and consistent with the normal development and improvement of their property, lying as it is, in territory where many changes in the urban and suburban portions of Washington County have occurred since this easement was created in 1898. What was then mainly rural has undergone a change in character, by reason of the mining and industrial progress in our county.

We thus conclude that the true construction of the right of way granted to plaintiff's predecessor in title reserves to defendants, as the owners of the servient tenement, the right to the use of their property in any way that will not interfere with the reasonable use thereof by plaintiff as the owner of the easement in question. This appears to be their right in law and equity, within the express reservation set forth in the grant of the right of way itself. This reservation, which we are compelled to construe most strongly against plaintiff and its predecessor in title, clearly indicates to this court that the right of way granted was not to interfere with the normal use and development of the land in question.

Adopting this theory of law, this court is of the opinion that the contemplated flooding of the land in question is within the legal rights of defendants, provided certain safeguards are supplied by defendants so as to protect the rights and interests of plaintiff, as will be hereinafter discussed.

An injunction is not of right and the chancellor is not bound to make a decree that will do far more mischief and work greater injury than the wrong he is asked to redress: Chartiers Block Coal Co. v. Mellon, 152 Pa. 286; Smith v. Rowland, 243 Pa. 306. The function of equity proceedings for an injury is not to declare rights, but to right wrongs. Acts, which though irregular and unauthorized, can have no injurious result, constitute no ground for the relief: The Haig Corp. v. Grassner Co., Inc., supra.

Practically every possible injury to plaintiff by the proposed flooding can be avoided by insuring proper safeguards and protection on the part of defendants as a condition for permission to proceed with the project contemplated by defendants. In other words, this court is of the opinion that defendants should be

permitted to use the land as contemplated here but only if the construction of the reservoir in question would be as testified to by defendants to prevent the water from mine workings to enter the reservoir and to provide flood gates whereby the reservoir could be drained within a reasonable time when plaintiff requests that it be drained by defendants to permit it to make any necessary repairs or replacements.

In addition to the right and privileges of plaintiff to require defendants to drain the reservoir when the same becomes necessary, plaintiffs are further entitled to a reasonable time in which to take such precautions as they may deem necessary to protect the portion of the pipeline to be affected by the flooding and not yet protected against the present swampy condition. Or, at its discretion, plaintiff should be permitted to move its present pipeline to or through any portion of defendants' land so as to remove the same from the area to be affected by the reservoir and this new right of way should be provided by defendants upon the agreement of plaintiff to surrender its present right of way over the portion of land in question.

This is not a case of attempting to balance the convenience of the parties, which our Supreme Court has frowned upon. It simply is a case of balancing the equities of the parties so as to permit defendants to use their property in any way that will not interfere with the reasonable use thereof by the owner of the easement and at the same time prevent substantial injury to plaintiff and unreasonable interference with its right of way. And we are the more compelled to do so where as here the wording of the conveyance creating the right of way, reserves that right.

We are of the opinion that this represents the policy of our Appellate Courts in similar situations that have been presented to them. While there is a dearth of

authority with respect to the exact proposition here presented, it can be said that the same rule has been adopted and applied at various times by our Appellate Courts, and particularly in the case of the Haig Corp. v. Grassner Co., Inc., supra.

### Conclusions of Law

1. William Rocca and Domenico Rocca hold record title to the real estate involved in this proceeding as joint tenants with right of survivorship and not as tenants in common, by virtue of a deed of record in Recorder's Office of Washington County, recorded in Deed Book, vol. 762, page 498, and Louis Partazana holds an unrecorded interest in said property.

2. The Equitable Gas Company is the owner of a certain right of way across the land of said defendants granted February 26, 1898 and of record in Recorder's Office in Washington County, in Deed Book, vol. 460, page 304, subject to the restriction contained therein, that the same should not interfere with the free use of the said land by the owners thereof.

3. Defendants, as owners of the servient estate, are entitled to enjoy the free use of said land subject to the use and maintenance of said gas line under the said right of way of plaintiff.

4. The flooding of a portion of the land owned by said defendants by the formation of a reservoir extending over and beyond a part of said right of way and over a part of said pipeline is not an unreasonable burden upon the right of way of plaintiff, and will not unreasonably interfere with the said easement owned by the Equitable Gas Company.

5. The proposed flooding of a portion of the Rocca property covering a portion of the pipeline of plaintiff, the Equitable Gas Company, would not impose upon plaintiff an unreasonable burden in the use and maintenance of its right of way.

6. That to prohibit defendants from flooding the land above the pipeline to a level of approximately three feet over the pipeline, would be an unjust and unreasonable interference with the rights of defendants in the use of their property.

7. That defendants have lawfully improved their land by the erection of a restaurant and motel thereon and an adequate supply of water is reasonably necessary in connection with the operation of the improvements thereon.

8. That the creation of a reservoir by defendants over a portion of the right of way of plaintiff must not deprive plaintiff of its right of ingress and egress to make any necessary repairs or replacements of that portion of its pipeline affected by the proposed reservoir.

9. That the proposed reservoir must be so constructed by defendants and so provided with flood gates or valves that said defendants can drain the said reservoir in the maximum time of five hours when requested by plaintiff to permit it to make any necessary repair or replacement of its pipeline affected by the reservoir.

10. That plaintiff should be allowed 60 days to take such steps or precautions that it may desire to protect the portion of the pipe to be affected by the reservoir and nothing more should be done by defendants toward the completion of said reservoir for said period of 60 days to give plaintiff the opportunity to put into effect such changes or precautions it may deem necessary to protect that portion of its pipeline in question to mitigate or reduce the possibility of any future break or leak in that portion of the pipeline.

11. That this court should retain jurisdiction of this matter to control the conduct of the parties in their respective rights and obligations under the de-

cree of this court made in connection with this adjudication.

## Decree Nisi

And now, September 7, 1954, it is hereby ordered and decreed as follows:

1. That the preliminary injunction granted August 21, 1953, be and the same is hereby dissolved.

2. That defendants may proceed with the construction of their proposed reservoir after the expiration of 60 days from the date of this decree, during which period of 60 days plaintiff may repair, replace, improve or change the portion of their pipeline to be affected by said reservoir.

3. That in the construction of said reservoir, defendants shall provide sufficient flood gates or valves to drain the same to a level of one foot below the portion of the pipeline of said plaintiff under said reservoir within five hours after receiving notice from plaintiff that the same is necessary to permit plaintiff to make necessary repairs or replacement of said pipeline.

4. That immediately upon receipt by defendants of notice from plaintiff that ingress to the right of way affected by the reservoir is necessary for the purpose of making repairs or replacements to that portion of its pipeline, said defendants shall begin to drain the said reservoir by opening the flood gates or valves provided for that purpose and keep the same open until the waters in said reservoir are at least one foot below the portion of the pipeline to be repaired or replaced.

5. That this court retain jurisdiction of this bill and of this matter to control the conduct of the parties in the matters set forth in this decree.

6. That the costs of this proceeding be divided equally between the parties hereto.