## Barget, Appellant, v. Drake.

*Waters—Grant of water right — License — Contract — Injunction— Equity.*

1. Where a corporation having a right to take water from a stream, and having constructed a system of pipes for that purpose, grants to an individual the right to construct a dam in the stream, and to construct pipes of his own to take water therefrom, the grantee has no right to avail himself of the grantor's system of pipes so as to take water from the stream, and if by permission he takes water from the grantor's pipes, because he is not able to establish a system of his own, such permission is a mere license, which may be revoked at any time.

2. Where an injunction is sought it must be made clearly to appear that the plaintiff had sustained injury, or is about to be damaged by the unlawful act of the defendant. Where the injury is doubtful or contingent, an injunction will not be granted.

Argued Dec. 4, 1912. Appeal, No. 121, Oct. T., 1912, by plaintiff, from decree of C. P. Monroe Co., Sept. T., 1910, No. 46, dismissing bill in equity in case of Charles Barget v. Dimmick D. Drake. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction.

STAPLES, P. J., found the facts to be as follows:

### FINDINGS OF THE JUDGE.

In the year 1891, the Delaware Water Gap Land and Improvement Company was incorporated. On May 5, 1893, it entered into an agreement of lease with Reuben

Staples for property in the borough of Delaware Water Gap, wherein he leased to said company "a certain piece of land extending from a dam across Caldeno Creek on the said Reuben Staples' property in the borough above mentioned through or alongside the bed of said creek to land of said Delaware Water Gap Land and Improvement Company, with the privilege of taking water from said creek at or below said dam. The above-mentioned land to be used for ram and pipes leading to and from the same, etc, at a rent of $4.00 per year." After having obtained the privileges as aforesaid, the said Delaware Water Gap Land and Improvement Company installed a water system upon said creek and its land, taking the water from said Caldeno Creek, and pumping it, by means of an hydraulic ram, to a reservoir, constructed by said company, on the highest part of its land, and from there it was conducted through and over Caldeno avenue, Minsi road and Shepard avenue, the pipe line being completed about 1893.

The said land and improvement company held a large tract of land for the purpose of the sale of lots, and on August 17, 1898, it conveyed to William Erwin a part of the above tract of land, and, inter alia, made to him the following grant:

"Also does grant and convey to the said party of the second part, his heirs and assigns the full and free right and privilege of taking and using the water of Caldeno Creek for household and domestic purposes forever, on this property only, and for these purposes to have the full and free right of constructing and maintaining a dam in said creek and the pumping of water if necessary by hydraulic or steam power, and conducting the whole from said creek by means of pipes buried below the surface over the lands of the said first party in such direction as indicated by said first party, about where the present pipe is laid, with the full and free right and privilege of ingress, egress, and regress over and upon the lands of said first party or their assigns, where said pipe

is or may be laid for the purpose of repairing, renewing, or relaying said pipe at any and all times, doing as little damage as possible and replacing the soil in good condition. The said privilege of damming said stream and the pumping of water to be subject however to the condition that if by reason of privileges granted by said first party more than one person is entitled to take water from said creek, they shall all use the same dam and the same pumping power, each to pay his proportionate part of the expense thereof. The above privileges so granted to include the use of water for hydraulic elevator or elevators, water motors, as long as the same shall not deprive other persons of water from said stream for household and domestic purposes."

After the said William Erwin erected a house, upon the land which he purchased from the said land and improvement company, he requested the privilege of temporarily attaching to the pipe line as above described, as he could not afford at that time to lay his own pipe. Consent to him was given, and he attached to the pipe line of the said land and improvement company at the corner of Caldeno avenue and Shepard avenue, and conducted the water therefrom through a pipe laid by him to his own house. He was to pay for the use of the pipes, but when he presented a check it was refused because he had written on the check "for water supply." That was objectionable to the company and they returned the check and also another one which he offered and which had marked upon it the same thing. (Dr. Towner, a tenant of William Erwin, paid for the use of the pipes partly in cash and partly in some pipe that was received by the said land and improvement company through him.)

Some time after this arrangement had been made and was in force, the said Erwin rented the premises to Dr. Towner, and Dr. Towner requested that he be permitted to install another hydraulic ram in the creek for the reason, that the ram installed by the land and improvement company was exposed to winter weather and could not

be protected from frost and he asked to install one that could be protected from frost. Consent to him was given and he installed a ram in a different place where the pipe could be buried, and placed over the ram a small shed, or house, and by means of this ram the water was pumped into said reservoir as it had been previously, and use of it was made in the same way by the said parties hereinbefore mentioned.

By a series of conveyances this property was finally vested in the said plaintiff, Charles Barget, viz.: on February 1, 1905. After he became the owner of the property, by an oral understanding had between himself and one of the officers of the Delaware Water Gap Land and Improvement Company, it was arranged that he was to pay $15.00 per annum for the use of the pipes to conduct the water to his house. After he had paid this rental for one year, as stated by one of the officers of the company, and for two years, as stated by Barget, one of the officers of the said land and improvement company, as alleged by Barget, requested the privilege of using a part of his (Barget's) land for golf links, to which he assented, and for which privilege he was to have the use of said pipes. There is no proof that this arrangement was ever formally ratified by the Delaware Water Gap Land and Improvement Company, but the fact that no payment for the use of the pipes was ever demanded, leads to the presumption that it was ratified. There was no evidence, however, as to the length of time this arrangement should continue, nor is there anything from which it could be inferred.

On June 13, 1907, the Delaware Water Gap Land and Improvement Company granted to Dimmick D. Drake, the defendant, the right to build a reservoir on Caldeno Creek and the right to the use of the tank house and pipes and water rights which said improvement company possessed, with the following stipulation, however, contained in the agreement: "It is further understood and agreed that this agreement is under and subject to all rights and privileges now vested in Charles Barget."

Since this grant, the Delaware Water Gap Land and Improvement Company has not paid any rental for said dam either to Reuben Staples' estate, nor to Morris E. Staples, the present owner of the land covered by the same, the land and improvement company having served notice on the said Morris E. Staples in 1907, when they made said grant to said Drake, that they had discontinued the use of the water.

Drake has constructed another tank on the heights with a capacity of 20,000 gallons, and also a catch basin in said Caldeno Creek, and driven an artesian well, and the hydraulic ram put in by Dr. Towner having become old and insufficient to pump the water, it was taken out by Mr. Drake and a new ram put in its place, which has since pumped the water in the same manner as was done by the ram previously therein. And from these several sources he has been furnishing water to the citizens of the Borough of Delaware Water Gap, charging a water rental for the same. He demanded of Barget that he pay the sum of $26.00 per annum for the water furnished to him. Barget, or his wife, made one payment (Barget alleging that it was done by his wife without his authority), and since that has refused to pay, claiming that he was entitled to the use of the water under the grant contained in his deed and by reason of the stipulation in the grant from the Delaware Water Gap Land and Improvement Company to Dimmick D. Drake, the said defendant; and because the plaintiff refused to pay the water rental, as demanded by the defendant, the defendant closed the pipe leading from the water pipes of the Delaware Water Gap Land and Improvement Company to plaintiff's house.

### CONCLUSIONS OF LAW.

1. The plaintiff, Charles Barget, had no vested right to take the water from the pipes of the Delaware Water Gap Land and Improvement Company's system now owned by the defendant, Dimmick D. Drake.

652          BARGET, Appellant, *v.* DRAKE.

Statement of Facts—Opinion of the Court.   [52 Pa. Superior Ct.

2. The permission to attach to said pipes and take the water therefrom was a mere license revocable at any time.

3. Dimmick D. Drake, the defendant, had the right to shut the pipe and prevent the water from running into plaintiff's pipe from the system of the Delaware Water Gap Land and Improvement Company.

4. The bill should be dismissed at the costs of the plaintiff.

### DECREE.

And now, July 11, 1911, the prothonotary is instructed to enter a decree nisi in accordance with the foregoing conclusions of law, and forthwith to give notice to the parties, or their counsel, of the filing of this decision and the entering of the decree nisi.

*Error assigned* was decree dismissing the bill.

*F. B. Holmes*, with him *A. Mitchell Palmer* and *C. R. Bensinger*, for appellant.

*Wilton A. Erdman*, for appellee.

Opinion by Henderson, J., February 27, 1913:

The plaintiff's right to take water from Caldeno Creek rests on the grant contained in the deed of the Delaware Water Gap Land & Improvement Company to William Erwin dated August 17, 1898. For several years prior to that date the improvement company had had in operation a water system the source of supply for which was the same creek at a place leased from Staples above the land of that company. From a reservoir constructed on its land the improvement company laid pipes along some of the streets of the borough which were in use as water conduits when Erwin acquired title. The grant to the latter included "the full and free right of constructing and maintaining a dam in said creek and the pumping of water if necessary by hydraulic or steam power, and conducting

the whole from said creek by means of pipes operated below the surface over the lands of the said first party in such direction as indicated by said first party, about where the present pipe is laid with the full and free right and privilege of ingress, egress and regress over and upon the lands of said first party or their assigns, where said pipe is or may be laid for the purpose of repairing, renewing or re-laying said pipe at any or all times, doing as little damage as possible and replacing the soil in good condition. The said privilege of damming said stream and the pumping of water to be subject, however, to the condition that if by reason of privileges granted by said first party more than one person is entitled to take water from said creek they shall all use the same dam and the same pumping power, each to pay his proportionate part of the expense thereof." We are unable to give to this grant a construction which would make it operative to vest in the grantee a title to or interest in the water system then owned and operated by the improvement company. The water right referred to in the deed is the privilege to the grantee of establishing a water system of his own or one to be constructed by him in co-operation with subsequent grantees of the improvement company who might require water in the enjoyment of their property. This appears from the very terms of the deed. The grantee was authorized to construct and maintain a dam in the creek and to establish a power system for forcing the water through the pipes; the pipes were to be laid under the direction of the grantor in proximity to the pipes then in use by the company. This does not on its face give to the grantee any right to water from the pipes of the grantor nor does the evidence show that it was so interpreted and understood by either of the parties when the grant was made. The learned trial judge has found as a fact that Erwin's use of water from the improvement company's plant was at his request and permissive only, he not being able at that time to establish his own water system. It was a license merely and revocable at the pleasure of the

improvement company or the defendant to whom the company sold the water system: Dark v. Johnston, 55 Pa. 164; Baldwin v. Taylor et al., 166 Pa. 507. As the purpose of the plaintiff's bill is to restrain the defendant from shutting off the plaintiff's water supply it was incumbent on the latter to show by prevailing evidence an agreement which vested in him a supply of water from pipes not laid by him and from a water system which he had neither constructed nor assisted in constructing. This he failed to do as the court found on sufficient evidence. It is unnecessary to consider the question raised by the amended bill and the effect of the grant of the water privilege from the improvement company to Erwin as affecting the right of the plaintiff to take water from the creek or the right of the defendant to divert water therefrom at his reservoir. The plaintiff is not attempting to exercise any right under his deed by taking water from the stream and is not affected at this time by such diversion. Where an injunction is sought it must be made clearly to appear that the plaintiff has sustained injury or is about to be damaged by the unlawful act of the defendant. Where the injury is doubtful or contingent an injunction will not be granted: Berkey v. Mining Co., 220 Pa. 65. The party still has his remedy at law if he have a case which would finally support an injunction. The decree of the court below necessarily followed the findings of fact and these findings are sustained by the evidence.

The appeal is dismissed and the decree affirmed at the cost of the appellant.