## Genkinger et al. v. City of New Castle Water Co. et al.

*Gilbert E. Long,* for plaintiffs.

*Robert S. Young, William D. Cobau, Robert J. Trace, C. Russell Welsh, Jr., Thomas V. Mansell, William S. Madden, Jr., Joseph Solomon,* for defendants.

BRAHAM, P. J., July 26, 1955.—This case comes before the court en banc on exceptions to an adjudication refusing to enjoin defendants from treating the water supply of the City of New Castle and surrounding municipalities with compounds of fluorine.

Plaintiffs have filed some 26 exceptions to the adjudication, but their main contention, raised by their 20th exception, is that it was ultra vires for the water

company to treat the water supply with fluorine. It is axiomatic that a corporation being a creature of the State has no powers except those conferred upon it by the legislature: Bangor Electric Company's Petition 295 Pa. 228; Citizens Electric Illuminating Co. v. Lackawanna and Wyoming Valley Railroad Co., 255 Pa. 176. Generally it is only the State which has the right to proceed against a corporation for violation of the powers granted by its charter or for usurpation of powers not granted: 13 Am. Jur. §1147, Corporations, page 1067.

The private citizen with only the right of every other citizen has no right to take legal action against a corporation on the ground that it acts are ultra vires; the Attorney General is ordinarily the one to act. In this State, however, the Act of June 19, 1871, P. L. 1360, 12 PS §1315, allows suit by private persons. The pertinent language is as follows:

"In all proceedings in courts of law or equity of this commonwealth, in which it is alleged that the private rights of individuals or the rights or franchises of other corporations are injured or invaded by any corporation claiming to have a right or franchise to do the act from which such injury results, it shall be the duty of the court in which such proceedings are had, to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such alleged injury to private rights, or to the rights and franchises of other corporations, results, and if such rights or franchises have not been conferred upon such corporation, such courts, if exercising equitable power, shall, by injunction, at suit of the private parties or other corporations, restrain such injurious acts; and if the proceedings be at law for damages, it shall be lawful therein to recover damages for such injury as in other cases."

Plaintiffs have relied upon the contention that the acts of the water company were ultra vires and defendants have constantly countered with the contention that only the Commonwealth has the right to raise the question. The problem now appears in a different light. The trial judge allowed plaintiffs to challenge the legality of the procedure because of their contention that their lives and health were in danger because of the treated water. Now the court has found that no such danger exists. Does the court have the right or is it under a duty to enjoin the treating of the water with fluorine, not because the treated water is dangerous but because the conduct of the water company is alleged to be ultra vires.

The Act of 1871 has been given a very limited construction. In Becker v. The Lebanon and Myerstown Street Railway Co., 188 Pa. 484, 496, the court ruled that notwithstanding the use of the word "shall" in the act, the real meaning is "may". The language of Justice Mitchell will make the point more clear:

"But this act, if it does anything more than declare the previous law, was intended to reinforce and make clearer the power of the courts to inquire into the rights and franchises of corporations in suits by private individuals, and perhaps in some degree to extend the class of cases in which such inquiry is open to suitors without the intervention of the commonwealth. It was not intended to do away with or change the general principles on which equitable relief is administered. Notwithstanding, therefore, the use of the imperative 'shall', the injunction is not to be granted unless a proper case for injunction be made out, in accordance with the principles and practice of equity. The word 'shall' when used by the legislature to a court is usually a grant of authority and means 'may', and even if it be intended to be mandatory it must be subject to the necessary limitation that a

proper case has been made out for the exercise of power."

The later cases follow the same guarded line. In Gring et al. v. Sinking Spring Water Co., 270 Pa. 232, Chief Justice von Moschzisker was at some pains to point out that the Act of 1871 is of "limited scope", ". . . it does not give general jurisdiction to grant relief wherever private rights are injured or invaded by a corporation, but simply affords individuals the right to complain, and endows the courts with power to inquire and restrain", . . . "the statute does not clothe the courts . . . with the commonwealth's general powers of inquiry", . . . "we have held that, notwithstanding the use of the imperative 'shall' in the statute, an injunction will not be granted thereunder, unless a proper case is made out in 'accordance with the principles of the practice of equity'."

To the same effect is Citizens Electric Co. v. Susquehanna Boom Co. et al., 270 Pa. 517, where defendant, Boom Company, although apparently exceeding its franchise by flooding properties, was not enjoined because this action was not required by general equitable principles.

The trial judge has found that the Department of Health of the Commonwealth and the water company are merely employing the latest and most approved methods of combating dental caries and that no real harm to plaintiffs has ensued or is threatened. In this situation the law does not favor the employment of the power of injunction, one of the most drastic of equitable remedies: Gillespie v. American Zinc & Chemical Co., 247 Pa. 222; Mint Realty Co. v. Wanamaker, 231 Pa. 277; Berkey v. Berwind-White Coal Mining Co., 220 Pa. 65; Andel v. Duquesne Street Railway Co., 219 Pa. 635; Rhodes et al. v. Dunbar et al., 57 Pa. 274; Barget v. Drake, 52 Pa. Superior Ct. 647.

The rule that the Act of 1871 authorizes the court to make an inquiry to determine whether plaintiffs have suffered actual damage but, lacking such damage, does not authorize the court to proceed and decide those matters of general concern with which the Attorney General is presumed to be particularly aware, applies with great force in this case. The action of the Department of Health and of the water company has been taken in the exercise of the police power. A large area of governmental policy is involved. If the power of the corporation to carry out the directions of the health department is to be challenged as ultra vires it should be at the suit of the Attorney General.

The bulk of plaintiff's exceptions, however, go to the validity of the findings of the trial judge that fluoridation of the drinking water is not a menace to the health of plaintiffs and of the public generally but a sound and practicable therapeutic measure. This is supported by the great weight of the evidence and we have no disposition to change our conclusion. To be sure there are scientists who believe further study should be made before wholesale fluoridation of the public drinking water is undertaken. The difficulty with plaintiffs is that they insist the court adopt the unfavorable opinions although they are the minority opinions.

Plaintiffs further contend that the court should have admitted the report of the congressional committee on fluoridation of water and some articles unfavorable to fluoridation generally instead of for the special purpose of showing the state of mind of plaintiffs. This evidence was not technically competent. Defendants had a right to confront the witnesses and to cross-examine them. The principle which plaintiffs seek to invoke is the exception to the hearsay rule for learned treatises: 6 Wigmore on Evidence (3rd) 2 par. 1690 et seq. Pennsylvania allows an exception for

ancient maps and documents and to some extent for historical and geographical maps relating to public matters and remote transactions: 1 Henry on Pennsylvania Evidence (4th Ed.) 358 par. 354. But even this is received in a very guarded fashion: Spalding v. Hedges, 2 Pa. 240; Laidley v. Rowe, 275 Pa. 389, 394; Hostetter v. Commonwealth, 367 Pa. 603.

"Learned treatises" as a subject of the law of evidence is akin to "judicial notice". In the Uniform Judicial Notice of Foreign Law Act of May 4, 1939, P. L. 42, 28 PS §292, the court is authorized to inform itself of the law of a foreign state by consulting all manner of authorities. The doctrine of judicial notice allows a court also to take judicial notice of unquestioned facts of a wide variety: 9 Wigmore on Evidence 571, §2580; 1 Henry on Pennsylvania Evidence, 500, par. 501.

But nowhere does the doctrine of learned treatises or judicial notice do more than to allow information to be given to a court regarding facts which are generally accepted. In the case at bar plaintiffs, in order to prove their point, desired to use the opinions expressed by learned men in a congressional hearing. The opinions expressed were partisan opinions. They were the type of opinions which need to be tested by confrontation. In no sense were they a statement of unquestioned facts.

Plaintiff's feeling that the court should have paid more attention to the unfavorable aspects of the fluoridation program is understandable but it overlooks the most salient point in the case. The Secretary of Health investigated the program of fluoridation, recommended it, and licensed the water company to employ it. A decent respect for the decisions of this high administrative officer requires that we do not interfere except in a clear case. This is not such a case. Nor is it necessary to allude specifically to the excep-

tions relating to the court's failure to find certain facts as requested by plaintiffs. The requests have served their purposes by calling the court's attention to the subjects. The court's findings will be found to have comprehended plaintiffs' contentions. The court is no longer obliged to answer specifically each request: Pennsylvania Rule of Civil Procedure 1516. To do so would unnecessarily prolong this opinion.

Entertaining these views we make the following

### *Order*

Now, July 26, 1955, the several exceptions of plaintiffs are each severally overruled and refused and the final decree is entered as follows:

Now, July 26, 1955, plaintiffs' petition for an injunction is refused and the action is dismissed. The costs shall be paid one half by the City of New Castle Water Company and one half by the Department of Health of the Commonwealth of Pennsylvania.