## Curll, Appellant, *v.* Dairymen's Cooperative Sales Association.

Argued March 22, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Henry E. Rea, Jr.,* with him *Robert G. MacAlister,* and *Metz, McClure, Hanna & MacAlister,* for appellants.

*E. Lowry Humes,* with him *Fred C. Kiebort* and *Humes & Kiebort,* for appellee.

*A. Evans Kephart,* for amicus curiae.

OPINION BY MR. JUSTICE CHIDSEY, May 27, 1957:

The appeal in this action in equity presents the basic question: Has the board of directors of the defendant, a milk producers' cooperative association organized under the Act of April 30, 1929, P. L. 885, as amended, 14 PS §81 et seq., the power to express the cooperative's approval or disapproval of the possible issuance by the Secretary of Agriculture of the United States of a Federal marketing order which would, inter alia, fix minimum producer prices for milk, without submission of the matter to a vote of the stock-

holders of the cooperative? The additional question arises: Was the action in equity by some of the individual producer-stockholders [1] prematurely instituted?

In his adjudication the chancellor, answering both of these questions in the affirmative, entered a decree nisi denying the prayer for injunctive relief and dismissing the plaintiffs' bill. Exceptions thereto were overruled by the court en banc which adopted the decree nisi as a final decree. This appeal followed. Inter-State Milk Producers' Cooperative which has operated in the Philadelphia milk market area under both Federal and State marketing orders since 1942,[2] filed a brief amicus curiae in support of appellee's position.

On or about May 13, 1954, the board of directors of the defendant cooperative submitted to the Secretary of Agriculture of the United States a proposed Federal order for what is defined and termed the Pittsburgh District covering an area wholly within but about half of the Pittsburgh milk marketing area as established by the Pennsylvania Milk Control Commission.

The Agricultural Marketing Agreement Act of 1937, 7 U. S. C. A. §601 et seq., 50 Stat. 246, was enacted, as stated therein, to establish and maintain orderly marketing conditions for commodities (including milk and its products) in interstate commerce and provides for marketing agreements exempt from anti-trust laws. Under §608c the Secretary of Agriculture is authorized

---

[1] It appears that several of the plaintiffs were not stockholders of the cooperative but in its brief the defendant-appellee states that this has been ignored in the interest of expediting the litigation.

[2] §311 of the Pennsylvania Milk Control Law, Act of April 28, 1937, P. L. 417, as amended, and §610 of the Agricultural Marketing Agreement Act of 1937, 7 U. S. C. A. §610, contain substantially similar provisions authorizing the respective authorities to hold joint hearings and issue complementary orders.

to issue an order, inter alia, fixing minimum producer prices which all handlers (dealers) shall pay producers for milk in any marketing area where the Secretary believes market conditions warrant such an order to effectuate the purposes of the Act. Any producer or cooperative association may apply for a Federal order and, as was done in this case, submit a proposed form of order. Thereupon the Department of Agriculture conducts an investigation and may hold public hearings with notice to all parties interested at which evidence is presented and briefs thereafter filed and con- proposed form of order or containing different terms, sidered by the Department. An order adopting the conditions, etc., *may* be recommended by the Secretary. This tentative or recommended order, however, becomes effective only after the approval, separate and apart from any other approval required by the Act, of either a specified number of producers supplying the market (two-thirds or three-fourths thereof depending upon certain circumstances) or those producers who represent the same percentages from a volume standpoint. In the referendum conducted a cooperative association is permitted to cast its vote as a unit for all of its producer-stockholders. This is provided for in subsection (12) of §608c of the Act which reads: "Whenever, pursuant to the provisions of this section, the Secretary is required to determine the approval or disapproval of producers with respect to the issuance of any order, or any term or condition thereof, or the termination thereof, the Secretary shall consider the approval or disapproval by any cooperative association of producers, bona fide engaged in marketing the commodity or product thereof covered by such order, or in rendering services for or advancing the interests of the producers of such commodity, as the approval or disapproval of the producers who are members of, stock-

holders in, or under contract with, such cooperative association of producers.". In referring to the foregoing sub-section (12) of §608c the Supreme Court in *H. P. Hood & Sons, Inc. et al. v. United States et al.,* 307 U. S. 588, 599, 59 S. Ct. 1019, 1025, stated: "Two cooperatives voted for their members in favor of the amendments to the Order. No poll was taken of the individual producer members. Nor was there any subsequent approval by them of the action taken on their behalf by the cooperatives. Section 608c (12) directs the Secretary to consider the approval or disapproval of cooperatives as the approval or disapproval of members. This is complete authority for the action of the Secretary. He need not require further referendums by cooperatives themselves. Presumably they will vote with an eye to the best interest of their members.".

It appears from the answer filed to the plaintiffs' complaint that the primary motive of the board of directors in initiating a proceeding under the Federal Marketing Agreement Act was to protect the individual producer-stockholders of the cooperative against importation from areas outside of the State of Pennsylvania of cheap milk under no price control—a matter which the Pennsylvania Milk Control Commission *could not* but the United States Department of Agriculture *could* regulate and prevent. On the other hand in their complaint the appellants claim that the proposed Federal order would be contrary to the best interests of the stockholders of the cooperative and solely benefit certain large dealers of milk who are not producers. However, the gravamen of appellants' complaint is that the directors of the cooperative cannot commit the corporation to a Federal order without the approval of a majority of the stockholders and the issue presented is not whether the proposed order is advan-

tageous or disadvantageous to the stockholders[3]—the only question before us, and as to which the briefs and arguments of the parties solely relate, is whether or not appellants can enjoin the defendant cooperative and its board of directors from accepting any Federal marketing order proposed for the Pittsburgh District without first obtaining the approval of a majority of the stockholders.

As authorized under Section 10 of the Act of 1929, supra, under which the defendant cooperative was incorporated, 14 PS §90, every stockholder of the defendant cooperative as a producer is required to sign an agreement whereby the individual producer agrees that he will consign for sale to the defendant, all milk and cream produced on any farm in the control of or operated by such producer, except such as he may give away or retain for home consumption, and the cooperative agrees to sell and dispose of such milk and cream "to such parties and by such methods as the Board of Directors shall deem to be to the best advantage of the Producer.".

Section 13 of the Act of 1929, as amended, 14 PS §93, provides: ". . . The board of directors shall manage the affairs of the association and shall perform such other duties as may be specifically imposed upon the board by this act. . . .".

Section 5 of the Act, 14 PS §85, provides that each association formed thereunder shall have, inter alia, the following powers:

"To make by-laws, not inconsistent with the law, for the management of its property, the regulation of

---

[3] In their brief, appellants expressly state that they do not "seek to have this Court determine the merits of the proposed federal order . . .".

its affairs and the conduct and management of the association."

"To perform for stockholders and other patrons the service described in the articles of association and authorized by this act."

"To make contracts necessary in the conduct of its operation and the transaction of its affairs.".

Article VII, Section 3 of the by-laws provides: "The Board of Directors shall manage the business and affairs of the Association and make all necessary rules and regulations not inconsistent with law or with the by-laws for the management of the business and guidance of the officers and employees and agents of the Association and the performance of the contracts of the Association.".

Article IX, Section 1 of the by-laws provides: "The Board of Directors may establish marketing districts for the sale and disposition of the milk and cream to be sold and disposed of by it and may assign each of the stockholders to such marketing district as may, in its judgment, be best adapted to the consummation of the purposes of the Association and shall authorize the disposition of all proceeds derived from the sale of milk and cream in conformity with the provisions of the contract in force between the association and the respective stockholders. The marketing districts may or may not be co-extensive with the representative districts established for the orderly election of Directors and the whole membership of a Local Branch may or may not be assigned to the same marketing district.".

Article IX, Section 2 of the by-laws of the defendant cooperative provides: "Marketing districts may be changed and altered by the Board of Directors from time to time as the orderly distribution of milk and cream and the stabilization of the industry may, in the opinion of the Board, require.".

In support of their contention that the challenged action of the board of directors required approval by the stockholders, appellants contend that a cooperative association is an unusual and distinctive legal entity which gives the producer-stockholder a voice in the cooperative's management not possessed by stockholders of an ordinary business corporation. It is true that a cooperative association has certain features distinguishable from those of a business corporation, a notable one being the contractual relationship which under the Act of 1929 may, and in the case of the defendant cooperative *was* created between the association and its stockholders. Each of the stockholders executed the written contract above referred to under the terms of which the stockholder, inter alia, agreed "to abide by all of the by-laws and the rules and regulations of the Association" and, without any reservation, to have the association sell and dispose of all milk and cream produced by him to such parties and "by such methods" as the board of directors shall deem to be to the best advantage of the producer. After consideration of the Act of 1929 authorizing the creation of cooperative associations, the by-laws of the defendant cooperative passed pursuant thereto and the contract entered into with it by each producer-stockholder, we agree with the conclusion of the court below that the stockholders have delegated to the board of directors the right and duty of selling their milk in the market by whatever methods the board of directors "shall deem to be to the best advantage of the Producer." and that the appellee, acting through its board of directors, has the power to approve or disapprove of any Federal order issued by the Secretary of Agriculture without submission of the matter to the producer-stockholders.

The foregoing conclusion is dispositive of the appeal and it is therefore unnecessary to pass upon the

additional reason given by the court below for dismissal of the complaint. But it may be observed that much may be said in support of the holding that appellants' action was prematurely instituted. No order had been recommended by the Secretary of Agriculture and consequently there was no referendum pending. Indeed the Secretary of Agriculture after a hearing, if one were called, could decide that a Federal order was not warranted in the area. Thus it does not appear that any Federal order is imminently forthcoming, and equity ordinarily will not enjoin an alleged harmful act where it is not reasonably certain of occurring. Cf. *Kelly v. Philadelphia*, 382 Pa. 459, 115 A. 2d 238, and cases cited therein.

Decree affirmed at cost of appellants.