Troiani Brothers, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Respondent.

Argued March 1, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Stephen F. Ban,* with him *Edward L. Springer,* and *Springer & Perry,* for petitioner.

*William T. Hawke,* Assistant Counsel, with him *George M. Kashi,* Assistant Counsel, and *Kathleen Herzog Larkin,* Chief Counsel, for respondent.

Opinion by President Judge Bowman, June 21, 1978:

Troiani Brothers, Inc. (Troiani) has filed a petition for review in the nature of a complaint in equity within our original jurisdiction[1] questioning the jurisdiction of the Pennsylvania Public Utility Commission (PUC) to conduct an application and a complaint proceeding, and requesting, pursuant to Section 1111 of the Public Utility Law (Code),[2] 66 P.S. §1441, an injunction staying those proceedings. Presently before us are the PUC's preliminary objections in the nature of a demurrer to Troiani's petition for review.

Troiani, a Pennsylvania corporation, operates the Pilot House, a luncheon and supper restaurant located

---

[1] Section 401 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended,* 17 P.S. §211.401.

[2] Act of May 28, 1937, P.L. 1053, *as amended.*

afloat the Monongahela River in Pittsburgh. In conjunction with this business, Troiani operates a passenger watercraft, the "Pittsburgher," whereby it transports customers, and proposes occasionally to transport persons not customers, to and from Three Rivers Stadium from the Pilot House dock. Troiani also proposes to offer sightseeing tours on the Ohio, Monongahela and Allegheny Rivers for hire, which tours will operate wholly within Allegheny County.

On October 22, 1975, Troiani made application to the PUC for a certificate of public convenience to operate the "Pittsburgher" in the above described manner. This application was protested on December 3, 1975, by Gateway Clipper, Inc., which is presently certificated by the PUC to provide services similar to those sought by Troiani's application. On February 25, 1977, over sixteen months after filing its application, Troiani, by letter of counsel, informed the PUC that, in its opinion, the PUC lacked jurisdiction to act upon said application.

On March 4, 1977, Troiani received a complaint from the PUC,[3] which alleged that Troiani had violated Sections 201 and 202 of the Code, 66 P.S. §§1121, 1122. Essentially, the complaint alleges that Troiani, without having obtained a certificate of public convenience, is performing transportation services which require a certificate. Troiani timely filed an answer to said complaint, denying certain factual allegations therein, and alleging under new matter that its activities did not fall within the PUC's jurisdiction. Troiani also requested the PUC to stay its proceedings until disposition by this Court of the instant petition for review. It appears that, to date, no further action has been taken by the PUC on either the pending application or the complaint.

---

[3] The complaint was "adopted" by the PUC on January 13, 1977, and "entered" by the PUC on March 2, 1977.

Section 1111 of the Code, invoked by Troiani, provides:

No injunction shall issue modifying, suspending, staying, or annulling any order of the commission, or of a commissioner, except in a proceeding questioning the jurisdiction of the commission, and then only after cause shown upon a hearing.[4]

Troiani here alleges that the PUC is "clearly in error" in exercising jurisdiction over the application and the complaint in that: (a) Section 13.1 of the Second Class County Port Authority Act (Second Class County Act),[5] 55 P.S. §563.1, vests exclusive jurisdiction over Troiani's activities in the Port Authority of Allegheny County; and (b) the watercraft services offered and proposed by Troiani do not and cannot constitute activities of a public utility "because they are merely incidental to Petitioner's primary restaurant business." The PUC's preliminary objections assert that Troiani has failed to state a cause of action under Section 1111 of the Code in that: (a) Troiani has not alleged that an appeal from a final adjudication is inadequate to determine any jurisdictional question; and (b) the PUC's exercise of jurisdiction in these matters is not clearly erroneous.

---

[4] Although neither party has raised the issue, and although we shall address the merits of the PUC's preliminary objections to Troiani's petition for review, some doubt exists as to whether any action thus far undertaken by the PUC in these proceedings constitutes an "order" within the meaning of Section 1111. While the Supreme Court has concluded that an order of the PUC setting a hearing on an application for a certificate is "an order as is within the contemplation of §1111 of the Public Utility Code," *Pennsylvania Public Utility Comm'n v. Allegheny County Port Auth.*, 433 Pa. 495, 500, 252 A.2d 367, 370 (1969), it could be argued that the proceedings in the case at bar have not yet reached even that germinal stage.

[5] Act of April 6, 1956, P.L. (1955) 1414, *as amended*, added by Section 13 of the Act of October 7, 1959, P.L. 1266, *as amended*.

The term "injunction" as utilized by the legislature in Section 1111 of the Code has been interpreted by the Supreme Court to mean, in effect, writ of prohibition. In *Akron Borough v. Pennsylvania Public Utility Commission (Akron)*, 453 Pa. 554, 564-65, 310 A. 2d 271, 276-77 (1973), the Court stated:

> While it is true that this statutory provision [Section 1111 of the Code] speaks of an 'injunction' and not of the common law power of prohibition, we think that the semantical difference is without significance. . . . We therefore think that when the General Assembly spoke in 66 P.S. §1441 of an 'injunction' to be issued only 'after cause shown', it did not intend to create any different test for determining in what circumstances a superior court (here the Commonwealth Court) would be justified in prohibiting proceedings in an inferior tribunal.

Thus, our inquiry in this case is whether Troiani has established the existence of any circumstances which would sanction the issuance of a writ of prohibition.

The circumstances under which a writ of prohibition may properly issue were reviewed in *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 102, 61 A. 2d 426, 430 (1948):

> The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy by appeal. . . .

On the other hand, it is well settled "that prohibition can be utilized to prevent the assertion by an inferior tribunal of a *clearly* erroneous claim of jurisdiction." *Akron, supra* at 561, 310 A.2d at 275 (emphasis in original). An extreme example of a clearly erroneous claim of jurisdiction would be the situation where a justice of the peace, empowered to hear only traffic law violations, would undertake to act upon a divorce complaint filed before him. *Id.* citing Gellhorn & Byse, *Administrative Law* 138 (1970). If, therefore, Troiani has established either the inadequacy of its remedy on appeal to raise its jurisdictional challenge or the clearly erroneous nature of the PUC's assertion of jurisdiction, a writ of prohibition could issue.

We believe that Troiani has failed to establish the inadequacy of its remedy on appeal. The argument advanced by Troiani in this regard is that its "statutory remedy of appeal from an adverse Commission order is not adequate to redress the monetary damages that would be caused to Troiani Brothers by a clearly erroneous assertion of jurisdiction over its activities by the Commission because any order of the Commission would bind Troiani Brothers until the order is overturned on appeal." A similar argument was rejected in *Akron, supra* at 562-63, 310 A.2d at 275-76:

> We do not think that the trouble and expense caused to appellee Akron in participating in a Commission proceeding leading to a final and appealable order makes the remedy of appeal less than adequate. That expense is 'part of the social burden of living under government,' Bradley Lumber Co. v. National Labor Relations Board, 84 F.2d 97, 100 (5th Cir. 1936), and is an 'inadequate basis for intervention whether by mandamus or injunction'. Whitehouse v. Illinois Central Railroad Co., 349 U.S.

366, 374, 99 L.Ed. 1155 (1955) (FRANKFURTER, J.).

If the PUC is improperly asserting jurisdiction in these proceedings, Troiani can raise the issue through the normal appellate process and, by so doing, will suffer no greater hardship than any other litigant seeking appellate review.

Troiani has also failed to establish that the PUC's assertion of jurisdiction is clearly erroneous. That Troiani has been able to formulate a legal argument to the effect that the Second Class County Act vests exclusive jurisdiction over this matter in the Port Authority of Allegheny County does not render the PUC's assertion of jurisdiction *clearly* erroneous. An *arguably* erroneous assertion of jurisdiction is not a *clearly* erroneous assertion thereof.

Moreover, even if a writ of prohibition could issue in instances of arguably erroneous assertions, we would not necessarily be persuaded by Troiani's jurisdictional argument. Troiani argues that the reasoning of *Erie-Western Pennsylvania Port Authority v. Rugare,* 29 Pa. Commonwealth Ct. 83, 370 A.2d 768 (1977), "controls the instant action so as to compel the conclusion that the Port Authority of Allegheny County alone has jurisdiction over the activities of Troiani Brothers." In *Rugare, supra,* we held that the exercise of regulatory authority by the Erie-Western Pennsylvania Port Authority, acting pursuant to the Third Class City Port Authority Act,[6] 55 P.S. §571 et seq., preempted the exercise of regulatory authority by the PUC. In light of the significant differences between the Second Class County Act and the Third Class City Port Authority Act, *e.g.,* the "mass transportation" aspects of the Second Class County Act, including the concepts of "transportation system" and

---

[6] Act of December 6, 1972, P.L. 1392.

"service area," and the requirement of a recorded "plan of integrated operation" contained in the former act but absent from the latter, we are unprepared at this juncture to conclude that the reasoning of *Rugare* controls the instant case.

Finally, Troiani's early action in this case belies its present assertion that the PUC's exercise of jurisdiction, at least over the application, is clearly erroneous. Troiani itself applied to the PUC for a certificate of public convenience, an action which seems to indicate that the question of PUC jurisdiction in these proceedings is one over which reasonable legal minds may differ.

Accordingly, we sustain the PUC's preliminary objections and dismiss Troiani's petition for review.

### Order

Now, June 21, 1978, the preliminary objections of the Pennsylvania Public Utility Commission are sustained and the petition for review of Troiani Brothers, Inc. is dismissed.