Erie-Western Pennsylvania Port Authority *v.* Joseph Rugare, d/b/a Julie Marie Lake Rides, Appellant.

84

Argued May 3, 1976, before President Judge Bow-MAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Daniel J. Beggy,* with him *Mansmann, Beggy & Campbell,* for appellant.

*Paul F. Curry,* with him *Stephen E. Jones, William C. Sennett,* and *Knox, Graham, Pearson, McLaughlin and Sennett, Inc.,* for appellee.

OPINION BY JUDGE ROGERS, March 3, 1977:

The narrow issue of this case is that of whether the exercise of regulatory authority by the Erie-Western Pennsylvania Port Authority (Port Authority) over ferryboat operations at the port of Erie, Pennsylvania, pursuant to the Third Class City Port Authority

Act (Act)[1] preempts the regulatory authority of the Pennsylvania Public Utility Commission (P.U.C.).

The Port Authority was created by ordinance of the City of Erie adopted pursuant to the Third Class City Port Authority Act. The Port Authority acquired land commonly known as the Erie public docks and the docking berths appurtenant which were formerly owned by the City. The Port Authority prepared leasing agreements for its public docks and berths, which described, *inter alia*, the services to be rendered and the rates to be charged for such services by the successful bidder.[2] In the spring of 1975 the Port Authority publicly advertised for bids for the leasing of the public dock facilities.

The appellant, Joseph Rugare, an individual doing business as Julie Marie Lake Rides and Ferry Service, has been transporting passengers on Lake Erie as a common carrier under rights granted by a P.U.C. Certificate of Public Convenience. The certificate permits the transportation by watercraft of persons between the public docks in the City of Erie and the pier on the north side of the entrance channel to Erie Harbor.

Upon receipt of a copy of the Port Authority's proposed lease and specifications, Rugare filed a complaint in equity in the Court of Common Pleas of Erie County seeking injunctive relief, alleging that the leasing specifications were a usurpation by the Port Authority of the P.U.C.'s power to set schedules and rates for common carriers, exercised by the grant of a certificate of public convenience to the plaintiff.

---

[1] Act of December 6, 1972, P.L. 1392, 55 P.S. §571 et seq.

[2] The specifications provided that all tickets were to be sold by the Port Authority with 10% of the gross being retained by the Port Authority; that competitive operations from the public dock should not be allowed; and that the Port Authority would set the schedules and rates of any successful bidder.

The Port Authority then filed its complaint against Rugare seeking an order restraining the defendant from trespassing on the public docks and berths. Judge FRED P. ANTHONY, noting that the parties had stipulated that the only issue was whether or not the Port Authority had regulatory authority to the exclusion of the P.U.C. and concluding on the authority of the Act that it did, enjoined Rugare from using the public dock facilities in his business and from the unauthorized use of water routes within the jurisdiction of the Port Authority. Exceptions filed by Rugare were dismissed by the court en banc and Rugare appealed to this Court.[3] We affirm.

As the trial judge noted, the Third Class City Port Authority Act is new and there are no cases construing it. The problem is one purely of statutory construction. The cardinal principle that the plain words of a statute cannot be disregarded where the language is free and clear from all ambiguity[4] is controlling here.

The Legislature stated the purposes of the port authorities authorized by the Act in Section 3(a), 55 P.S. §573(a), as those of "planning, acquiring, holding, constructing, improving, maintaining and operating, owning, leasing, either as lessor or lessee, port facilities and equipment." A port facility is defined by Section 2 of the Act, 55 P.S. §572, as

> [including] all real and personal property used in the operation of a port terminal,[5] including, but without being limited to, wharves, piers, ships, *ferries, docks,* graving docks . . .

---

[3] Rugare continued to operate his business after the Court's order and was adjudged in contempt and ordered to pay a fine of $2,100.00, which he did.

[4] Statutory Construction Act of 1972, 1 Pa. C.S. §1921.

[5] A port terminal is defined in Section 2 as any marine terminal used or to be used in connection with the transportation or transfer of personnel.

*or harbor craft of any kind,* markets and every kind of terminal storage or supply depot, now in use or hereafter designed for use, *to facilitate transportation* and for the handling, storage, loading or unloading of freight at terminals, and equipment, material and supplies therefor. (Emphasis supplied.) (Footnote added.)

Section 3(b) of the Act, 55 P.S. §573(b), grants port authorities all powers necessary or convenient for the carrying out of the purposes described above. In addition, a number of specific rights and powers are conferred by that section. One, conferred by Section 3(b)(5), 55 P.S. §573(b)(5), is that of leasing franchises, property or interests therein as necessary or desirable for carrying out the authorities' purposes. By Sections 3(b)(9) and 3(b)(20), 55 P.S. §§573(b)(9) and (20), respectively, authorities are empowered:

To *fix, alter, charge and collect fares, rates, rentals and other charges* for its facilities by zones or otherwise, at reasonable rates to be determined *exclusively* by it, subject to appeal, as hereinafter provided, for the purpose of providing for the payment of the expenses of the authority, the acquisition, construction, improvement, repair, maintenance and operation of its facilities and properties, the payment of the principal and interest on its obligations, and to comply fully with the terms and provisions of any agreements made with the purchasers or holders of any such obligations. *The authority shall determine by itself exclusively, the facilities to be operated by it and the services to be available to the public.* Any person questioning the reasonableness of any rate or services fixed by an authority may bring suit against the authority in the court of common

pleas of the county wherein the authority is incorporated. *The court shall have exclusive jurisdiction to determine the reasonableness of fares, rates and other charges or services fixed, altered, charged or collected by an authority.* The court shall make such order as to fares, rates and other charges or services as to it shall be just and proper. . . . (Emphasis supplied.)
and

To establish carrier routes and services, including water routes and water services as it deems necessary for the efficient operation of the port; provided, that the authority shall not engage in the transportation of property by motor vehicle outside the port terminal without the approval of, and subject to regulations by, Pennsylvania Public Utility Commission.

Our reading of these provisions convinces us, as it did the Erie County Court of Common Pleas, that the Erie Port Authority has the power to regulate passenger ferryboat operations at the Port of Erie, exclusive of the P.U.C. The definition of public facilities, over which the Port Authority is given broad powers, clearly includes the public docks and facilities which the Authority leased. As noted by Judge ANTHONY for Erie County Court, the use of the word "exclusively" in Section 573(b)(9) clearly demonstrates the Legislature's intention to give the Port Authority sole power to determine the existence and extent of public necessity for all water services and matters incident thereto. The statutory directive that the Court of Common Pleas have exclusive jurisdiction to determine the reasonableness of "fares, rates, and other charges and services" precludes the exercise of the same power by the P.U.C.

Section 3(b)(20), 55 P.S. §573(b)(20), grants the Port Authority power to establish water carrier routes

and services. The same provision specifically preserves the regulatory power of the P.U.C. over motor vehicle transportation of property outside the port terminal. The preservation of P.U.C. jurisdiction in this regard together with the absence of any provision saving its powers otherwise demonstrates that the Legislature in granting broad powers to the Port Authority was mindful of the effect of the legislation upon P.U.C.'s former regulatory powers.

The appellant directs our attention to Section 9 of the Third Class City Port Authority Act, 55 P.S. §579, which provides that "[a]ll contracts and purchases [of the port authority] shall be made in accordance with the . . . 'Third Class City Code.' "[6] Section 1913 of the Third Class City Code, 53 P.S. §36913, authorizes cities of this class to enter into contracts with public transportation companies "[s]ubject to the provisions of the Public Utility Law." The appellant says that the effect of these provisions is that the Port Authority has no power to control by lease or otherwise his fares, schedules and methods of operation, since these matters are by the Public Utility Law committed to the P.U.C. The error in this argument lies in the appellant's overbroad interpretation of Section 9 of the Third Class City Port Authority Act. The statute says that contracts and purchases of the Port Authority *shall be made in accordance with*—that is, shall be let or made in the manner provided by—the Third Class City Code; not that the substance and subject matter of the Port Authority's contracts must conform to the limitations on city contracts imposed by the Third Class City Code.

We are mindful of the general principle that the General Assembly believes that sound public policy requires that public utilities be regulated by agencies

---

[6] Act of June 23, 1931, P.L. 932, *as amended* 53 P.S. §35101 et seq.

of the Commonwealth with statewide jurisdiction rather than by local authorities who might exercise their powers with an eye toward the local situation and not in the best interest of the larger public. *Duquesne Light Co. v. Monroeville Borough,* 449 Pa. 573, 298 A. 2d 252 (1973); *Commonwealth v. Delaware & Hudson Railway Co.,* 19 Pa. Commonwealth Ct. 59, 339 A.2d 155 (1975). That principle, however, has no application where there is express statutory grant of power to local authorities. Subsections (b)(9) and (b)(20) of Section 3 of the Third Class City Port Authority Act clearly demonstrate the General Assembly's intention to allow the creation of a Port Authority in Erie with exclusive authority and power to provide the facilities and to regulate the services needed in the Port of Erie.

Appellant also says that comparison of the Third Class City Port Authority Act with the Second Class County Port Authority Act, Act of April 6, 1956, P.L. 1414, *as amended,* 55 P.S. §551 et seq., supports a conclusion that the General Assembly did not intend by the former to confer the power on local authorities to regulate transportation systems. In the Second Class County Port Authority Act, the term transportation system is defined as including property useful in the transportation of passengers for hire, and the Authority is given power to acquire and operate transportation systems. Since no definition of a transportation system appears in the Third Class City Port Authority Act, the appellant asks us to conclude that the Legislature intended not to confer power on Third Class City port authorities to regulate such systems. Overlooked in this thesis is the fact that, as its title says, a principal purpose of the Second Class County Port Authority Act was to improve *mass transportation* in populous Allegheny County. Naturally no such concern appears in the title of the Third Class City

Port Authority Act. Hence, the absence in the Third Class City Port Authority Act of mention of transportation systems as a subject of regulation does not cause us to hesitate to affirm the Erie Port Authority's regulatory powers over those using its facilities so clearly conferred by statute.

### ORDER

AND Now, this 3rd day of March, 1977, the Order of the Court of Common Pleas of Erie County, made June 11, 1975, is affirmed.