Port Authority of Allegheny County, Petitioner v. Pennsylvania Public Utility Commission, Respondent; Colonial Taxi Company, Inc. et al., Intervenors.

Port Authority of Allegheny County, Petitioner v. Pennsylvania Public Utility Commission, Respondent; Tube City Taxicab Company, Inc. et al., Intervenors.

Port Authority of Allegheny County, Petitioner v. Pennsylvania Public Utility Commission, Respondent; North Hills Green Cab Company et al., Intervenors.

Port Authority of Allegheny County, Petitioner v. Pennsylvania Public Utility Commission, Respondent; Open Doors for the Handicapped, t/d/b/a Magic Carpet Transportation for the Handicapped, Intervenor.

Port Authority of Allegheny County, Petitioner v. Pennsylvania Public Utility Commission, Respondent; The Yellow Cab Company of Pittsburgh, Intervenor.

Argued February 6, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DISALLE. Judges CRAIG and MACPHAIL did not participate.

*Robert M. Brown,* with him *Dennis L. Veraldi,* and *Ruffin, Hazlett, Snyder, Brown & Jack,* for petitioners.

*Kenneth S. Siegel,* Assistant Counsel, with him *Alfred N. Lowenstein,* Assistant Counsel, and *Kathleen Herzog Larkin,* Chief Counsel, for respondent.

*Arthur J. Diskin,* with him *Jerome Solomon; Richard S. Dorfzaun; Dickie, McCamey & Chilcote; William A. Gray;* and *Wick, Vuono & Lavelle,* for intervenors.

OPINION BY PRESIDENT JUDGE BOWMAN, July 19, 1979:

These consolidated appeals are from orders of the Pennsylvania Public Utility Commission (PUC) granting the application of various common carriers to engage in "paratransit" operations in Allegheny County.

Prior to evidentiary hearings on the merits for each application, the Port Authority of Allegheny County (Authority) filed with the PUC motions to dismiss on the grounds that it lacked jurisdiction to grant a certificate of public convenience for such services. The Authority's position was, and continues to be, that the Second Class County Port Authority Act (Port Authority Act), Act of April 6, 1956, P.L. (1955) 1414, *as amended*, added by Section 13 of the Act of Oct. 7, 1959, P.L. 1266, *as amended*, 55 P.S. §551 et seq., vests exclusive power in the Authority to establish an integrated system of mass transportation for the transportation of passengers for hire within Allegheny County including the type of service in controversy.

These motions to dismiss were denied by the PUC and the applications advanced through evidentiary hearings, and as to each of which the administrative law judge recommended granting the applications.

The Authority filed exceptions to each of these recommendations, objecting to the characterization of the Authority as a "protestant" in the proceedings as well as renewing its objections to the PUC's exercise of jurisdiction. The PUC concluded that paratransit service does not constitute mass transportation or group and party service, which the Authority is empowered to regulate pursuant to the Port Authority Act, dismissed the exceptions, and adopted the proposed decisions of the administrative law judges. Thereafter, the Authority took these appeals.

The PUC then filed motions to quash on the grounds that the Authority, as a "protestant" below, was not a "party" qualified under the concepts of standing to pursue these appeals. Upon consideration of these motions, and the Authority's answers thereto, we directed they be listed and argued at the same time as argument upon the merits.

The PUC motion to dismiss the appeals on the theory that the Authority is not aggrieved because the PUC orders do not adversely affect the Authority within the meaning of *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), is denied. Whether as a "protestant" or otherwise in the proceedings below the Authority participated and consistently asserted its exclusive jurisdiction and authority over the type of common carrier passenger transportation which was the subject of the proceedings before the PUC. The PUC reached a contrary conclusion finding it had jurisdiction to the exclusion of the Authority. It is difficult to conceive of a governmental action of more adverse affect upon the Authority than that here in question.

Both the PUC and the Authority are creatures of the legislature, deriving the sum of their powers from the statutes creating them. *Western Pennsylvania Water Company v. Pennsylvania Public Utility Commission*, 471 Pa. 347, 370 A.2d 337 (1977). The issue, then, is one of statutory construction. Does the grant of authority within the Port Authority Act to the Authority to regulate public transportation within Allegheny County divest the PUC of jurisdiction in cases such as these?

It is declared in Section 1(9) of the Port Authority Act, 55 P.S. §551(9) to be, as a matter of legislative finding, "desirable that the public transportation system be combined, improved, extended and supplemented by the creation of authorities as herein provided." Whereupon, Section 3, 55 P.S. §553, creates the port authorities "for the purpose of planning, acquiring, holding, constructing, improving, maintaining and operating, owning, [or] leasing . . . a transportation system" within the county of incorporation. Section 3(b)(9) provides further that "[t]he authority shall determine by itself exclusively, the facilities to be op-

erated by it and the services to be available to the public.''

Once such a plan of integrated operation has been adopted and recorded within the confines of the specific grant of powers outlined in Section 3, ''the authority [is to] have exclusive jurisdiction with respect to all matters regarding (a) its transportation system. . . . The Public Utility Commission shall have no authority to grant certificates of public convenience for a transportation system within the service area of the authority or for the establishment of group and party rights to operate wholly within such service area.'' Section 13.1 of the Port Authority Act, 55 P.S. §563.1.

The question then, simply put, devolves to whether or not paratransit service can be included within the ''transportation system'' of Allegheny County. If so, the jurisdiction of the Authority is exclusive. *Cf. Erie-Western Pennsylvania Port Authority v. Rugare*, 29 Pa. Commonwealth Ct. 83, 370 A.2d 768 (1977) (Third Class City Port Authority Act precludes PUC regulation when grant of power to Port Authority is "exclusive," unless express reservation is included therein).

''Transportation system'' is defined in Section 2 (13), 55 P.S. §552(13) as:

[A]ll property, real and personal, useful for the transportation of passengers for hire, including but not limited to power plants, substations, terminals, garages, bridges, tunnels, subways, monorails, railroad motive power, trains, railroad passenger cars, and equipment, belt conveyors, inclines, car barns, street cars, buses, rails, lines, poles, wires, off-street parking facilities, as well as the franchises, rights and licenses therefor, including rights to provide group and party services: Provided, That such

term shall not include taxicabs or bus companies, the main purpose of which is the transportation of children to and from school.

It is clear to us from a reading of Section 1 of the Port Authority Act that the legislature intended the jurisdiction of the Authority to encompass "mass transportation" within Allegheny County. This jurisdiction was carved out of the general grant of jurisdiction over common carriers granted to the Commission by the Public Utility Code, 66 Pa. C.S. §101 et seq.

Though no definition of a "mass transportation system" appears in the Port Authority Act, The Vehicle Code, 75 Pa. C.S. §102, defines an "Urban mass transportation system" as:

A person holding a certificate of the Public Utility Commission or a municipality authority, port authority or transportation authority established under the laws of this Commonwealth that transports persons on schedule over fixed routes and derives over 80% of their intrastate scheduled revenue from scheduled operations within the county. . . .

We find this definition of aid to us in concluding that the term "mass transportation system" as utilized in the Port Authority Act entails concepts of scheduled operation over fixed routes. *See,* the Statutory Construction Act of 1972, 1 Pa. C.S. §1932.

Paratransit service, on the other hand, consists largely of service performed under contracts with organizations aiding the elderly or handicapped. Transportation is reserved in advance, and the individuals are picked up at their homes and deposited at their designations. When ready to return they call the paratransit operator and a van is dispatched.

In addition, members of the public, whether handicapped or able-bodied, may reserve a van for trans-

portation to and from their homes and various destinations. The individual passengers, as well as the social service organizations described above, pay a rate based on the number of miles traveled.

We believe that this sort of service is not the type of service envisaged by the legislature when it vested exclusive jurisdiction in the Authority over a mass transportation system, encompassing as it does a fixed route and schedule (*see* 52 Pa. Code §29.14), and group or party service which entails transportation of a group to one predetermined destination, charges for which are based upon the transportation of the group and paid by the group rather than individuals (52 Pa. Code §29.16).

As we have held that the Port Authority Act carves out an exception to the general rule that the Commission is to have jurisdiction over certificating common carriers, and that paratransit service does not fall within the exception(s), then we must agree with the respondent that responsibility for certificating paratransit operations lies with the PUC.

Our opinion in this regard is buttressed by that portion of Section 2(13), 55 P.S. §552(13), which expressly excludes taxicabs from the "transportation system" of Allegheny County. We do not subscribe to the position advanced by the Authority that the legislature intended by this exclusion to vest in the Authority jurisdiction over all other types of public transportation. We read this section simply to mean that taxicab service is not to be included within mass transportation systems or group or party service.

The Authority argues strenuously that the van-type service envisioned by the paratransit applications does not fit within any definition of "taxicab," apparently laboring under the misconception that the only mode of transportation still subject to PUC regulation is traditional "taxicab" service.

The Vehicle Code, 75 Pa. C.S. §102, defines a "taxi" as "[a] motor vehicle designed for carrying no more than eight passengers . . . on a call and demand service, and used for the transportation of persons for compensation." The supplemental taxicab regulations envision call and demand service as being performed by the standard four door passenger type taxicab. *Karpe v. Pennsylvania Public Utility Commission*, 29 Pa. Commonwealth Ct. 162, 370 A.2d 399 (1977); *see* 52 Pa. Code §§29.122-.136. The Authority argues that since paratransit service does not comport with these common definitions of a taxicab, then the PUC is without jurisdiction.

This argument is misplaced. PUC regulations classify common carriers into three groups: (1.) scheduled route service between fixed termini or over designated routes; (2.) call or demand service; (3.) group or party service. *See* 52 Pa. Code §29.13. Within the same regulations "taxicabs" are defined, in part, by their role in performing call and demand service, and "[a]ny vehicle used in *normal* taxicab service shall be a four-door passenger automobile. . . ." (Emphasis added.) 52 Pa. Code §29.123(a). The Port Authority Act removes from PUC jurisdiction two of the three classifications of common carriers, yet excludes from the Authority's jurisdiction "taxicabs," defined in large part by the type of carrier service they perform. We believe it is reasonable to conclude, therefore, that by use of the term "taxicab" within Section 2(13) of the Port Authority Act, 55 P.S. §552(13), the legislature intended that emphasis be placed on the type of service performed rather than the type of vehicle used to perform that service, and that while *normal* taxicab service is to be performed by a 4-door sedan, *abnormal* taxicab service need not be so restricted.

We hold, therefore, that paratransit service, not falling within definitions of an urban mass transpor-

tation system or group and party service, being more akin to taxicab service, is subject to PUC regulation.

ORDER

Now, July 19, 1979, the orders of the Pennsylvania Public Utility Commission entered August 30, 1977, October 19, 1977 and November 29, 1977 at Application Docket Nos. 80980, F.4; 81789, F.4; 83910, F.4; 99895, F.1; and 49926, F.6 are hereby affirmed.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

After miscroscopic reading of the definition of "public transportation" and upon reflective consideration of the economic and administrative practicalities of a unified system in Pittsburgh, I can reach no other conclusion but that this was a service, although not specifically delineated at the time of the enactment of the governing section cited by the majority, belonging nowhere but in the domain of its local transportation facility, namely, the Port Authority. The expansive rationale of the majority does not lead, in my judgment, to its suggested inescapable conclusion that there is little, if any, question as to the soundness of its interpretation.