Carol Lines, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued June 6, 1984, before Judges ROGERS, CRAIG and BARBIERI, sitting as a panel of three.

*Val Plett Wilson,* with him, *Herbert Somerson, Somerson and Bomze, P.C.,* for petitioner.

*Michael C. Schnierle,* Assistant Counsel, with him, *Kenneth E. Nicely,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, September 5, 1984:

The Pennsylvania Public Utility Commission (PUC) instituted complaints against Carol Lines, Inc. (Carol Lines) on February 22, 1979 and April 19, 1979, alleging in each that Carol Lines had violated Section 1101 of the Public Utility Code (Code), 66 Pa. C. S. §1101, by transporting passengers during the summer of 1978 as a common carrier without a certificate of public convenience. Carol Lines admitted that it provided transportation services without a certificate of public convenience, admitting it had done so under contract with the Teen Tours Program of the Klein Jewish Community Center. It contended, and still contends, that its actions were not in violation of Section 1101 because: (1) the PUC is without jurisdiction to regulate passenger bus service in the Philadelphia metropolitan area because the Pennsylvania Urban Mass Transportation Law (Mass Transportation Law), Act of January 22, 1968, P.L. 42, *as amended,* 55 P.S. §§600.101-600.407 vests regulatory authority exclusively in the Southeastern Pennsylvania Transportation Authority (SEPTA); and (2) the transportation services which it provided were within the statutory exemption provided by Section 102 of the Code, 66 Pa. C. S. §102, excepting the transportation of school children from the definition of common carrier by motor vehicle.

The Administrative Law Judge (ALJ) who heard the case rejected both of Carol Lines' attacks on PUC

authority and Carol Lines appealed. The PUC adopted the ALJ's decision and ordered Carol Lines to pay a three hundred dollar penalty and to cease transporting persons for compensation in violation of the provisions of the Code. Carol Lines has appealed from the PUC's order. It advances the same two arguments here as it did to PUC.

### SEPTA Jurisdiction

Section 303(a) of the Mass Transportation Law, 55 P.S. §600.303(a), provides for "the creation of a separate body corporate and politic in each metropolitan area, to be known as the transportation authority of such area. . . [which] shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof." The term metropolitan area is defined by Section 302(a), 55 P.S. §600.302(a), to "mean all of the territory within the boundaries of any county of the first class [Philadelphia] and all other counties located in whole or in part within twenty miles of such first class county." The purposes of the transportation authority are those "of planning, acquiring, holding, constructing, improving, maintaining, operating, leasing, either as lessor or lessee, and otherwise functioning with respect to, a transportation system. . . ." Section 303(a), 55 P.S. §600.303(3)(a). A transportation system is defined to "mean all property, real and personal useful for the transportation of passengers for hire, including but not limited to . . . buses . . . as well as the franchises, rights and licenses therefor, including rights to provide group and party services . . . [with the exception of] taxicabs." Section 302, 55 P.S. 600.302.

SEPTA is the mass transportation authority created to arrange mass transportation within the boundaries of the State's only first class county, Philadelphia, and all other counties within twenty

miles. Hence, the area within which SEPTA may and has operated is all of Bucks, Chester, Delaware, Montgomery and Philadelphia counties, a vast and heavily populated area indeed.

In support of its contention that SEPTA, not the PUC, has been given exclusive regulatory jurisdiction of its carrier activities, Carol Lines cites *Port Authority of Allegheny County v. Pennsylvania Public Utility Commission,* 494 Pa. 250, 431 A.2d 243 (1981) and *Erie-Western Pennsylvania Port Authority v. Rugare,* 29 Pa. Commonwealth Ct. 83, 370 A.2d 768 (1977). Both cases are plainly distinguishable from this.

In *Port Authority of Allegheny County v. Pennsylvania Public Utility Commission,* the issue was that of whether the PUC had been divested of jurisdiction over paratransit services within Allegheny County by the Second Class County Port Authority Act, Act of April 6, 1956, P.L. 1414, *as amended,* 55 P.S. 551-563.5. Section 13.1 of that Act, 55 P.S. §563.- 1 provides pertinently:

> The Public Utility Commission shall have no authority to grant certificates of public convenience for a transportation system within the service area of the authority or for the establishment of group and party rights to operate wholly within such service area.

The Mass Transportation Act has no provision denying the PUC jurisdiction to grant certificates of public convenience within the five counties which comprise the SEPTA metropolitan area. Further, the Second Class County Port Authority Act provides at Section 13.1, 55 P.S. §563.1, that "[t]he authority shall have the exclusive right to operate a transportation system within the service area as set forth in the plan of integrated operation," but Section 303(d)(9) of the Mass Transportation Act gives SEPTA only

the right, within its service area, exclusively to determine the facilities it will operate and the rates to be charged for their use.

*Erie-Western Pennsylvania Port Authority* and its companion, *Rugare (II) v. Pennsylvania Public Utility Commission,* 29 Pa. Commonwealth Ct. 111, 370 A.2d 772 (1977) concerned which of the PUC or the Erie-Western Pennsylvania Port Authority had regulatory jurisdiction of Rugare's transportation of passengers between the public docks in the City of Erie and a pier at entrance channel to Erie Harbor after the creation of the Port Authority and its assumption of control of the City of Erie's docks. The Authority prepared leasing agreements which described the services to be rendered and the rates to be charged by persons using the docks as carriers in the harbor.

*Rugare I* was the Port Authority's suit for restraint of Rugare from using the public docks without the permission of the Authority. *Rugare II* was Rugare's appeal from an order of the PUC dismissing his complaint seeking a PUC order restraining the Port Authority from interfering with his rights under his PUC certificate. In *Rugare I* we affirmed the grant by the chancellor of an injunction restraining Rugare's use of the Port Authority's facilities and in *Rugare II* we affirmed the PUC's order refusing to restrain the Authority from interfering with his use of the port facilities. We therefore upheld both the court's and PUC's decision that the Port Authority, not the PUC, had exclusive authority to regulate the activities of persons engaging in ferry port operation from the Authority's docks. We held that the provisions of the Third Class City Port Authority Act, Act of December 6, 1972, P.L. 1392, 55 P.S. §571-585, defining the port facility as including ferries, docks, and harbor craft and empowering the Port

Authority exclusively to fix rates for its facilities and exclusively to determine the services to be available to the public, demonstrated the Legislature's intention to give the Port Authority sole power to determine the public need for service and the charges for such service, to the exclusion of the PUC.

Because, not remarkably, some of the language of the later Third Class City Port Authority Act is the same as or similar to that of the Mass Transportation Law, Carol Lines contends that in the light of the *Rugare* cases, we must decide that SEPTA has exclusive jurisdiction to regulate all transportation in the five counties of southeastern Pennsylvania.

Of course, an immediate and compelling difference between the *Rugare* cases and this is that in the former the ferryboat operator desired to continue business under PUC rates and schedules while operating from the Port Authority's docks over which the Port Authority had been given, and sought to exercise, exclusive power to fix charges and services. Carol Lines, and the other privately owned transit facilities still operating under PUC regulatory authority, use the public roads of southeastern Pennsylvania, in accordance, it is to be hoped, with the Legislature's expressed intention at Section 301(a)(8) of the Mass Transportation Law, 55 P.S. §600.301(a)(8), "that such authorities cooperate with . . . existing transportation facilities [so] that private enterprise and government may mutually provide adequate transit facilities for the convenience of the public."

Section 301(a)(8) is not alone in demonstrating that it was never supposed by the Legislature that all of the PUC regulated private transportation companies in the five county area would be regulated by SEPTA. Section 308 of the Mass Transportation Act, 55 P.S. §308 empowers SEPTA "to enter into agreements with any public utility operating a . . . trans-

portation facility . . . for the joint use of any property of the authority or public utility''; Section 310, 55 P.S. §600.310, forbids SEPTA to use any street presently occupied by a public utility engaged in local transportation for a competing purpose without the agreement of the public utility; and Section 336, 55 P.S. §600.336, requires the PUC to transfer the books and records of any public utility "[i]n case [SEPTA] acquires the plant, equipment, property and rights in property of such other utility.''

In sum, the Mass Transportation Act does not subject all public utilities engaged in transportation in the metropolitan area to regulation by SEPTA; and Carol Lines is subject to PUC jurisdiction.

### Section 102 of the Pennsylvania Public Utility Code, 66 Pa. C. S. §102

Carol Lines contends that the PUC erred in concluding that the transportation services it provided the Klein Jewish Community Center were not exempted from PUC jurisdiction by Section 102 of the Public Utility Code, excluding from the definition of common carrier by motor vehicle carriers which transport school children for school purposes and activities. We rejected the identical challenge by our order affirming the PUC decision in *Carol Lines, Inc. v. Pennsylvania Public Utility Commission*, 83 Pa. Commonwealth Ct. 393, 447 A.2d 601 (1984), with an analysis of this issue by Judge ROBERT W. WILLIAMS, JR. so thorough that further discussion of it here is not necessary.

Order affirmed.

#### ORDER

AND Now, this 5th day of September, 1984, the order of the Pennsylvania Public Utility Commission is affirmed.